IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 25, 2020

**JAMIE CROWELL[1] v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Chester County**
**No. 19-CV-14      Roy B. Morgan, Jr., Judge**
_____

**No. W2019-01775-CCA-R3-PC**
_____

The Petitioner, Jamey Crowell, appeals the post-conviction court's denial of his petition for post-conviction relief from his 2017 Chester County convictions for aggravated kidnapping, facilitation of aggravated assault, and three drug-related convictions, arguing that he was denied the effective assistance of counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Joseph Tilton Howell, Jackson, Tennessee, for the appellant, Jamey Crowell.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In April 2017, the Petitioner was convicted by a Chester County Circuit Court jury of aggravated kidnapping, facilitation of aggravated assault, possession of

_____
[1] The Petitioner's first name is spelled as "Jamie" in our direct appeal opinion and in a few of the pleadings in this post-conviction case. However, it is spelled as "Jamey" on the judgments, in the technical record, in the appellate briefs and throughout most of the pleadings. During the post-conviction evidentiary hearing, the Petitioner testified that the correct spelling of his first name is "Jamey."

methamphetamine with the intent to deliver, possession of the Schedule II controlled substance oxymorphone, and possession of drug paraphernalia and was sentenced by the trial court to an effective term of seventeen years at 100% in the Department of Correction. This court affirmed his convictions on direct appeal, and our supreme court denied his application for permission to appeal. State v. Jamie Crowell, No. W2017-00799-CCA-R3-CD, 2018 WL 2238209, at *1 (Tenn. Crim. App. May 23, 2018), perm. app. denied (Tenn. Sept. 14, 2018).

Our direct appeal opinion reveals that the Petitioner's convictions stemmed from his participation with two co-defendants, Daryl Gatley and Dustin McCollum, in terrorizing and holding at gunpoint Mr. McCollum's mother, Gail Pearson, in her home. The defense theory at trial was that the Petitioner was not an active participant in the crimes, that he was attempting to calm Mr. McCollum's rage and paranoia, and that he was himself threatened at gunpoint by Mr. McCollum when he tried to escape from his presence. Id. at *1-6. Our direct appeal opinion provides our following analysis of the evidence in support of the Petitioner's aggravated kidnapping conviction:

> The [Petitioner] asserts that the evidence did not support his aggravated kidnapping conviction because he merely "sat quietly on the couch and never spoke to the victim" or "restrained the [v]ictim's movement at all." To sustain the conviction for aggravated kidnapping, the State had to prove that the [Petitioner] knowingly removed or confined Ms. Pearson unlawfully so as to interfere substantially with her liberty "[w]hile [he] [wa]s in possession of a deadly weapon or threaten[ed] the use of a deadly weapon." Tenn. Code Ann. §§ 39-13-302(a); -304(a)(5). Viewing the testimony in the light most favorable to the State, Ms. Pearson testified that she did not feel free to leave after Mr. McCollum ordered the [Petitioner] not to let her do anything "stupid," and the [Petitioner] pointed his gun at her during the ordeal and was involved in a discussion with his co-defendants about killing her. Ms. Pugh[, the victim's sister who overheard part of the exchange over the telephone,] confirmed that she heard the [Petitioner] actively engaged in the discussion with his co-defendants about how to kill Ms. Pearson. Although the [Petitioner] offered testimony that he was not an active participant, the jury was not required to accredit that testimony. The evidence is sufficient to sustain the [Petitioner's] conviction for aggravated kidnapping.

Id. at *6.

On May 28, 2019, the Petitioner filed a pro se petition for post-conviction relief in which he raised a claim of ineffective assistance of trial counsel. Following the

appointment of post-conviction counsel, the Petitioner filed an amended petition in which he alleged that his trial counsel was ineffective for failing to make appropriate objections during trial and closing argument, failing to retain the services of an investigator, failing to negotiate a settlement, failing to adequately cross-examine witnesses, and failing to adequately communicate with the Petitioner, including to adequately inform him of the nature of the charges "so as to allow him to prepare a defense and protect against violations of his [constitutional] rights[.]"

At the September 6, 2019 evidentiary hearing, the Petitioner testified that trial counsel, whom he retained after his preliminary hearing, met with him only two times during the course of his entire representation. During their first meeting, trial counsel asked about the facts of the case and whether the Petitioner's family could afford to pay trial counsel for his services. According to the Petitioner, trial counsel did not meet with him again until he came to the jail to prepare the Petitioner for trial, in a meeting that lasted less than 45 minutes and that occurred approximately a week before the start of trial.

The Petitioner testified that trial counsel told him the evidence could not support his conviction on the charges, that trial counsel would be able to win the case at trial, and that the Petitioner should not accept a plea offer from the State. The Petitioner said he nonetheless informed counsel that he was willing to accept a plea deal involving an eight-year sentence at thirty percent. He testified that his co-defendant, Dusty McCollum, pled guilty in exchange for an eight-year sentence at thirty percent, and his other co-defendant, Daryl Gately, pled guilty in exchange for a six-year sentence a thirty percent. The Petitioner stated that on the day that he was in court with his co-defendants for their guilty pleas, and on which he would have also pled guilty if given the opportunity, trial counsel's secretary called to speak with him, but trial counsel never appeared in court. Because his counsel was not present, he was never given the chance to express to the court his willingness to accept the State's eight-year offer. When he spoke with trial counsel the following day, he told him that he wanted to accept the eight-year offer from the State. Trial counsel, however, informed him that it was too late because the court's plea cutoff date had passed. According to the Petitioner, had his trial counsel been present in court the previous day, he would have accepted the State's plea offer at that time.

The Petitioner also complained about trial counsel's failure to raise objections at trial about the introduction of evidence of the Petitioner's prior drug use, failure to introduce alleged exculpatory evidence, and failure to investigate the backgrounds and statements of the trial witnesses. He testified that trial counsel raised a successful objection to the drug testimony of one witness but never again objected to further testimony about drug use by that witness or other witnesses. Trial counsel also failed to investigate the background of the witnesses or to interview the State witnesses before trial, telling the Petitioner only that he did not have access to the State's witnesses.

The Petitioner testified that he asked trial counsel to introduce Ann Pugh's 911 call into evidence, but counsel told him it was unnecessary. According to the Petitioner, the call could have been used to impeach Ms. Pugh's testimony about the Petitioner's alleged involvement in the crime because she made no mention of his name during the call. In a similar vein, he believed that trial counsel was deficient for not obtaining telephone records and a voicemail left by the victim, which, according to the Petitioner, could have proved that Ms. Pugh was mistaken in her identification of the Petitioner's voice. The Petitioner stated that he also asked trial counsel to obtain fingerprint evidence from the five guns that were found in the house and DNA evidence from the syringe that was found in the car but counsel refused, telling him that there were no fingerprints lifted from the guns and offering no explanation for his refusal to obtain DNA evidence from the syringe.

The Petitioner testified that although trial counsel had a recording of the preliminary hearing, he failed to obtain a transcript of it. The Petitioner expressed his belief that trial counsel would have been able to impeach the State's witnesses with inconsistencies between their trial and preliminary hearing testimony, had counsel obtained and reviewed a transcript of the preliminary hearing. He stated that trial counsel told him that it would cost him over $1000 to obtain a transcript of the hearing, but the Petitioner later learned that a transcript had been available in discovery materials that trial counsel failed to pick up.

The Petitioner testified that trial counsel discussed the charges with him in detail and told him that there was "no way" he would be convicted. Trial counsel did not, however, discuss lesser included offenses with him. The Petitioner said he asked counsel on several different occasions to arrange for him to make a statement to the sheriff's office because the Petitioner wanted to tell law enforcement "[his] side of the story." Counsel, however, never contacted anyone to arrange for his statement. Finally, the Petitioner complained that trial counsel erroneously told him that the maximum amount of time he faced if convicted at trial was eight to twelve years. He said that trial counsel was surprised at the sentencing hearing to learn that the Petitioner qualified as a Range II offender because trial counsel never investigated the Petitioner's history. According to the Petitioner, had counsel investigated, he would have learned that the Petitioner had twelve prior felony convictions and thirty or thirty-two prior misdemeanor convictions.

On cross-examination, the Petitioner acknowledged that in addition to the two meetings he had with trial counsel at the jail, he and trial counsel spoke by telephone on multiple occasions. He further acknowledged that the first time he ever received an eight-year offer from the State was the morning that he left for the courthouse on the day he received the phone call from counsel's secretary. He conceded that his position at trial,

- 4 -

which he still maintained, was that he was not a participant in the crimes but instead a victim.

On re-direct examination, he reiterated that he had no idea about the trial court's plea cutoff date and said that he would have been willing to accept the eight-year at thirty percent offer had he been given an opportunity that morning. He said he had told trial counsel on multiple occasions that he "would take an 8 at 30 with all the aggravated charges dropped so [he] could receive good time and not have aggravated charges and could get out." On recross-examination, he testified that he had rejected earlier offers of twenty years and twelve years.

Trial counsel testified that he was retained to represent the Petitioner before the Grand Jury returned an indictment in the case. During the course of his representation, he spoke with the Petitioner several times about the facts of the case and the pros and cons of proceeding to trial, interviewed and obtained statements from a list of witnesses the Petitioner provided, and obtained and reviewed the open file discovery provided by the State. Trial counsel stated that the facts of the case were fairly straightforward. The Petitioner, who was arrested at the scene, maintained that he was innocent and believed that the victim would testify at trial that he was not a participant in the crimes. The Petitioner also insisted that Ann Pugh, who claimed to have overheard the Petitioner's voice during her telephone call with the victim, was lying because she had never heard his voice. However, Ms. Pugh's testimony at trial, contrary to what the Petitioner led counsel to believe, was that she had known the Petitioner "forever" and knew exactly what his voice sounded like. Trial counsel said there was no recording of Ms. Pugh's telephone call with the victim.

Trial counsel testified that the State's initial offer to the Petitioner was twenty years, which the Petitioner was unwilling to accept. He said the Petitioner's "major hang-up" was with the fact that the State made it very clear that it would not dismiss the aggravated assault charge. The Petitioner did not want to plead guilty to aggravated assault because it would impact his ability to earn good time credits in prison.

Trial counsel testified that the witnesses he called at trial all testified in accordance with his expectations. He stated that in addition to attempting to prove that the Petitioner was not a participant, he also attempted to show that the Petitioner was under duress and that he presented witnesses in support of the Petitioner's claims in that respect. He said he raised the fact that witnesses were questioned about the Petitioner's prior drug use as an issue on appeal and agreed that although the appellate court ruled that it did not rise to the level of plain error, it nevertheless addressed it and ultimately upheld the Petitioner's convictions and sentences. Trial counsel testified that there was nothing different he would have done in the case in hindsight and agreed that the case came down to the jurors having

accredited the testimony of the State's witnesses over that of the Petitioner and his witnesses.

On cross-examination, trial counsel recalled discussing the 911 call with the Petitioner but could not recall the outcome of their discussion. His recollection of their discussion about the guns was that he told the Petitioner that it was best to leave the issue alone, since the State had not fingerprinted the weapons, and for trial counsel to argue to the jury that the State could have attempted to obtain fingerprints from the weapons but had not. As for the Petitioner's complaint about his failure to obtain a transcript of the preliminary hearing, he testified that he reviewed the recording of the hearing three separate times and carefully "pulled out everything . . . that [he] thought might be helpful" to the Petitioner's case.

With respect to what occurred on the plea cutoff date, trial counsel recalled that the district attorney telephoned on the morning of the hearing to inform him that the Petitioner had a court date that day. Trial counsel said he was unaware of that date and speculated that it may have been because he did not represent the Petitioner in general sessions court. Regardless, he said he informed the district attorney that he had appearances already scheduled for Juvenile Court in Savannah and Circuit Court in McNairy County and would be unable to attend. He testified that the Petitioner had an offer that day for eight years, but the offer included the Petitioner's pleading guilty to aggravated assault, which the Petitioner adamantly refused to do. On redirect examination, he reiterated that it was the Petitioner's absolute refusal to accept a deal that involved a conviction for aggravated assault that prevented him from obtaining a successful plea bargain in the case:

> There -- He was -- The State wanted him to plead to two felonies, kidnapping and aggravated assault, and he -- he was going to take one felony and make the aggravated assault go to misdemeanor. I believe that's correct. I believe that's correct. It may have been the State wanted him to plead just to aggravated assault and he said no, it's simple assault, but I thought he was willing to plead to one felony as long as the aggravated assault got reduced so he could get his good time, like he testified to.

Trial counsel agreed that the Petitioner heard, but rejected, the State's offer. He said the plea cutoff date was not absolute; he had had cases that settled after the plea cutoff date. In this case, however, they never could come to an agreement and therefore proceeded to trial.

The post-conviction court denied the petition at the conclusion of the hearing, issuing extensive oral findings of fact and conclusions of law, followed by a written order entered on September 16, 2019.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).

Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

The Petitioner contends that the post-conviction court erred in denying his petition, arguing that trial counsel prejudiced the outcome of his case by his mishandling of the plea negotiations, by his failure to object to evidence of the Petitioner's drug use, and by his failure to obtain DNA and fingerprint evidence, the recording of the 911 call, and a transcript of the preliminary hearing.

In denying the petition, the post-conviction court specifically accredited the testimony of trial counsel over that of the Petitioner, finding, among other things, that trial counsel had regularly communicated with the Petitioner, thoroughly investigated the facts, reviewed discovery, including the audiotape of the preliminary hearing, and developed and presented a meaningful defense. The court also found that the Petitioner failed to show that counsel was deficient in the manner in which he cross-examined witnesses or raised objections and noted that the Petitioner's complaints about his sentencing and the drug testimony evidence were addressed on direct appeal. The court further found that the Petitioner, with his extensive criminal history, was well aware of his sentencing classification and that he simply wanted a plea bargain that the State was unwilling to offer. The court noted for the record that it was a common practice for plea cutoff dates to be flexible and that it would have considered a plea agreement after the cutoff date had the Petitioner and the State been able to reach an agreement. The post-conviction court therefore concluded that the Petitioner failed to meet his burden of showing that trial counsel was in any way deficient in his representation or that the Petitioner was prejudiced as a result.

The record fully supports the findings and conclusions of the post-conviction court. It is clear from Petitioner's own testimony at the evidentiary hearing that he is well-versed in the criminal justice system and was aware of his range classification. It is also clear from his testimony, which was echoed by trial counsel, that he wanted a plea agreement that did not involve a conviction for aggravated assault, which would affect his ability to earn good time credits in prison. Trial counsel's testimony established that he investigated the case, interviewed witnesses, held numerous discussions with the Petitioner, attempted to negotiate a plea, and presented a meaningful defense at trial of attempting to show that the Petitioner was not a participant and/or was under duress at the time of the crimes. Trial counsel explained why he did not pursue fingerprint or DNA analysis of the weapons. Although counsel could not recall why he did not obtain the tape of the 911 call or the telephone records, he testified that there was no recording of the victim's telephone call with her sister, and it is unclear how the telephone records would have helped the Petitioner's case. The Petitioner has failed to meet his burden of demonstrating that he was denied the effective assistance of counsel. We, therefore, affirm the judgment of the post-conviction court denying the petition.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE